UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT GRAHAM,

    Plaintiff,

v.                                                       CASE NO: 8:12-cv-635-T-23MAP

SARASOTA COUNTY SHERIFF'S
OFFICE,

    Defendant.
_____/

## **ORDER**

As a deputy sheriff in 1986, Sergeant Robert Graham began his twenty-three-year career with the Sarasota County Sheriff's Office. In 1990 Sergeant Graham joined the Office's Special Investigations Bureau and served as a "technical agent," a "special risk" employee responsible for maintaining electronic surveillance equipment, training others to use the equipment, and monitoring the equipment for "officer safety . . . and evidence gathering." (Doc. 25 at 14)

In 1996 Sergeant Graham sustained an injury to his lumbar spine caused by lifting a seventy-pound computer battery. After a surgery to repair the herniated disc, Sergeant Graham's physician imposed a restriction on the amount of weight Sergeant Graham could lift. But in 1998, Sergeant Graham again herniated the disc, this time by lifting a twenty-pound box. After unsuccessfully attempting other treatment, Sergeant Graham endured a second surgery, in 2001, and Sergeant Graham's

surgeon maintained the lifting restriction. Graham remained a sergeant in the Special Investigations Bureau and continued to "perform all of the essential safety sensitive functions of a certified law enforcement officer, with the exception of lifting [more than] thirty pounds." *See* Letter from Debbie Burns, the Safety Compliance Manager for the Sheriff's Office, to Dr. Steven Chun, Sergeant Graham's Surgeon (Mar. 11, 2004) (Doc. 35-3). The Sheriff's Office assigned Sergeant Graham, when serving in "the field," to a "perimeter position."

Before 2007 the Office tested physical fitness under a voluntary "wellness incentive program" designed to compensate and encourage physical exercise. But in 2007 Sheriff William Balkwill issued General Order 22.7, which required each officer to "attempt" in 2007 a Physical Aptitude Test, which included a "dummy drag" – "drag a one hundred fifty pound . . . object for a distance of fifty feet." (Doc. 27 at 137) Sheriff Balkwill ordered successful completion of the fitness test by 2009. After winning election in 2008, the new sheriff, Thomas Knight, maintained as mandatory the physical fitness test and the dummy drag. Although "lifting" appears nowhere in the general order's description of the "dummy drag," the Sheriff's Office required each officer to lift the dummy to the officer's chest before beginning the drag (more accurately, the "dummy lift and drag").

Aware of the lifting restriction, the Sheriff's Office granted Sergeant Graham an exclusion from the general order's requirement that each officer "attempt" the "dummy drag" in 2007. Before his "in-service training day" in October, 2009,

Sergeant Graham reminded the Sheriff's Office of his doctor's lifting restriction, and the Sheriff's Office held a series of meetings, at which Sergeant Graham repeatedly requested to perform the "dummy drag" without lifting the dummy.  At the first meeting, in October, the Sheriff's Office placed Sergeant Graham on administrative leave with full pay and benefits.  At the second meeting, in December, the Sheriff's Office asked whether Sergeant Graham's doctor would rescind the lifting restriction to allow Sergeant Graham to lift the dummy.  Also, the Sheriff's Office offered Sergeant Graham re-assignment to one of three positions, each of which reduced Sergeant Graham's salary by two-thirds.  Days later Sergeant Graham met with his doctor, who refused to repeal the lifting restriction but permitted Sergeant Graham to perform the "dummy drag," as written in the general order, without the lift. (Doc. 35-1 at 6)  At the third meeting with the Sheriff's Office, Sergeant Graham again requested an exclusion from the dummy lift.  The Sheriff's Office denied the request, Sergeant Graham declined the offers for re-assignment, and the Sheriff's Office terminated Sergeant Graham.  After the termination, Sergeant Graham requested a meeting with Sheriff Knight, who declined.  Sergeant Graham requested a "Career Service Board Review" under Sheriff Knight's General Order 10.5, but the Sheriff's Office refused, asserting that only "disciplinary actions" are eligible for review by the Career Service Board.

     Sergeant Graham sues (Doc. 9) Sheriff Knight and alleges discrimination and retaliation under the Americans With Disabilities Act and the Florida Civil Rights

Act, alleges an invasion of privacy, and alleges a violation of Section 110.227, Florida Statutes.  Sheriff Knight moves (Doc. 23) for summary judgment.

## Retaliation and Discrimination

For each discrimination claim, the resolution of the motion for summary judgment turns on whether Sergeant Graham, with an "accommodation," can perform the "essential functions" of a Sergeant in the Special Investigation Bureau. *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000).  Title 29, Section 1630.2(n) defines "essential functions":

> (1) In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires.  The term "essential functions" does not include the marginal functions of the position.
>
> (2) A job function may be considered essential for any of several reasons, including but not limited to the following:
>
>> (i) The function may be essential because the reason the position exists is to perform that function;
>>
>> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>>
>> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.
>
> (3) Evidence of whether a particular function is essential includes, but is not limited to:
>
>> (i) The employer's judgment as to which functions are essential;

> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

Sheriff Knight apparently argues that the "dummy lift and drag" is an "essential function." *See* Motion for Summary Judgment, Doc. 23 at 18 ("The prior accommodation given to [Sergeant Graham] was for something, voluntary physical fitness testing, which was not yet an essential function of his job. Once successful completion of the [fitness test] became an essential function in 2009, [Sergeant Graham's] failure to fulfill that function was no longer subject to being accommodated."); at 16 ("[I]t is undisputed that the Sheriff has made successful completion of the PAT . . . an essential function of the job."); at 15 ("[Sergeant Graham's] past performance before the PAT became mandatory does not require the Sheriff to change the essential functions of [Sergeant Graham's] job to accommodate his inability to perform an essential function of that job."). In response, Sergeant Graham emphasizes that since the 1996 injury he "received above-standard ratings"

while serving with a lifting accommodation. Conspicuously lacking either factual or legal merit, Sheriff Knight's argument compels no further analysis.[*]

### Invasion of Privacy

An invasion of privacy requires the publication of private facts to the "public at large or to so many persons that the matter must be regarded as substantially certain to become public knowledge." *Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991). The only evidence of a potential invasion of privacy cited in Sergeant Graham's response appears in the eighteenth paragraph of Sergeant Graham's affidavit:

> I have a good faith belief that Captain Bell had access to my confidential and protected medical information, or that, alternatively, someone with access to my confidential and protected information advised Captain Bell of the contents of my medical records. This belief is based upon the temporal proximity of the following undisputed facts:
>
> > a. I have never suffered from or exhibited any signs of depression or mental illness prior to my termination in December 2009;
> >
> > b. In December 2009, Captain Bell, a colleague I have known nearly my entire career with the Sarasota County Sheriff's Office, expressed unwarranted and unprovoked excessive concern over my mental well-being; and
> >
> > c. I discovered, and Dr. Chun admitted to, erroneous medical history pertaining to clinical depression being contained within my medical

---

[*] Because the response (Doc. 34 at 16-18) to the motion for summary judgment presents evidence that Sergeant Graham's accommodation request preceded the termination, Sergeant Graham's retaliation claims survive summary judgment.

- 6 -

> records that applied to another patient and had been erroneously inserted into my records.

(Doc. 35-1 at 3) Captain Bell's concern about Sergeant Graham's mental health in December, 2009, fails to establish publication "to so many persons that the matter must be regarded as substantially certain to become public knowledge." *Williams*, 575 So. 2d at 689.

### Violation of Section 110.227, Florida Statutes

The complaint alleges (1) that under Section 110.227(5)(a) Sergeant Graham "was entitled to an opportunity to appear before the agency to answer orally and in writing the charges against him" (Doc. 1, ¶ 48) and (2) that Sheriff Knight violated the statute and Sarasota County Sheriff's Office General Order 10.5 by "refus[ing] to provide Graham with his opportunity to appear before the agency for a review and opportunity to be heard."

Chapter 110, Florida Statutes, titled "State Employment," governs employees of the State of Florida, not appointees of the sheriff, a "County Officer" elected "by the electors of [the] county." Fla. Const. art. VIII, § 1(c); *Pirez v. Brescher*, 584 So. 2d 993, 995 (Fla. 1991). But even if protecting Sergeant Graham's employment, Section 110.227 establishes no private right of action. Instead, state employees who believe that the state failed to follow the procedure in Section 110.227 must appeal to the Public Employees Relations Commission. Fla. Stat. § 110.227(5)(a); *King v. Florida*, 650 F. Supp. 2d 1157, 1166 (N.D. Fla. 2009) (Mickle, J.).

The claim under General Order 10.5 also fails for several reasons. "Historically, in Florida, deputy sheriffs have not enjoyed any guarantees to employment. They have traditionally been employed at the pleasure of the sheriff." *Grob v. Bieluch*, 889 So. 2d 85, 86 (Fla. 2d DCA 2004) (citing *Brown v. Wheeler*, 669 So. 2d 318, 319 (Fla. 4th DCA 1996)).

> A sheriff is authorized to appoint deputies for whose acts he is responsible, to act in his stead. A deputy sheriff holds office by appointment, rather than by employment, and is thus an officer, rather than an employee. The sheriff has absolute control over the selection and retention of deputies in order that law enforcement be centralized in the county, and in order that the people be able to place responsibility upon a particular officer for failure of law enforcement. Thus, a deputy sheriff has no property interest in his office and no constitutional due process protections when he is dismissed. Neither does he acquire a contract right by virtue of a disciplinary procedure unilaterally adopted by the sheriff, which the sheriff may similarly modify or completely revoke at will.

*Szell v. Lamar*, 414 So. 2d 276, 277-78 (5th DCA 1982) (internal citations omitted); *accord McRae v. Douglas*, 644 So. 2d 1368 (Fla. 5th DCA 1994); *Crews v. Ellis*, 531 So.2d 1372 (Fla. 1st DCA 1988); *Brevard County v. Miller*, 452 So.2d 1104 (Fla. 5th DCA 1984); *Evans v. Hardcastle*, 339 So.2d 1150 (Fla. 2d DCA 1976); *Stough v. Gallagher*, 967 F.2d 1523 (11th Cir.1992). The sheriff's absolute discretion is trumped by only a special or general act of the legislature establishing a career service system for the sheriff's office. Fla. Stat. § 30.53; *McRae*, 644 So. 2d at 1373.

The complaint and the accompanying papers identify neither a legislative act nor a career service system created by a legislative act. General Order 10.5 appears unilaterally adopted by Sheriff Knight and therefore unilaterally revocable by Sheriff

Knight (or, at least, Sergeant Graham offers no authority to the contrary). But even if Sheriff Knight issued General Order 10.5 under a directive from the legislature, even if a career service system limits Sheriff Knight's discretion, and even if Sergeant Graham properly and timely requested a hearing, General Order 10.5 provides no private right of action. Rather than properly alleging a procedural due process violation, a private right of action recognized against Sheriff Knight both under the Florida Constitution and under the United States Constitution through 42 U.S.C. § 1983, Sergeant Graham fatally alleges only a violation of either General Order 10.5 or Section 110.227, neither of which creates a private right of action.

## Conclusion

Sheriff Knight's motion for summary judgment (Doc. 23) is **GRANTED IN PART** and **DENIED IN PART**. Sergeant Graham's motion to strike Sheriff Knight's expert (Doc. 33) is **DENIED WITHOUT PREJUDICE**. Sergeant Graham may object at trial or submit a motion in limine. The clerk is directed to enter judgment in favor of Sheriff Knight and against Sergeant Graham on Counts V and VI.

ORDERED in Tampa, Florida, on April 23, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE